IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-BR4, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-BR4, | No. 87191-9-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BARBARA K. HANSON; JAMES D. HANSON; and PERSONS OR PARTIES UNKNOWN CLAIMING ANY RIGHT, TITLE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT HEREIN, | |
| Appellants. | |

BOWMAN, A.C.J. — In 2007, James and Barbara Hanson defaulted on their home loan. In 2014, Deutsche Bank National Trust Company, as trustee for "Secured Asset Backed Receivables LLC Trust 2007-BR4, Mortgage Pass-Through Certificates, Series 2007-BR4" (Deutsche), sued the Hansons, seeking judicial foreclosure. Both parties moved for summary judgment, and the trial court granted summary judgment for Deutsche. The Hansons appeal, arguing Deutsche's claim is barred by the statute of limitations and the doctrine of laches. And both parties request attorney fees and costs on appeal. Because Deutsche's claim is not time barred and the Hansons cannot show that any unreasonable delay by Deutsche in bringing its claim caused them damage, we

affirm the amended judgment and decree of judicial foreclosure and underlying summary judgment orders and award Deutsche its attorney fees and costs on appeal.

FACTS

In 1976, the Hansons bought land at 17080 Dunbar Road in Mount Vernon (Property). In 2007, they refinanced their Property with New Century Mortgage Corporation. The Hansons executed an "Adjustable Rate Balloon Note" (Note), agreeing to pay $344,250 plus interest over 30 years with monthly installments beginning April 1, 2007.[1] They also executed a "Deed of Trust" secured by the Property, naming Mortgage Electronic Registration Systems Inc. as the beneficiary and New Century as the lender.

The Deed of Trust has an acceleration clause stating that if the Hansons default and fail to timely cure it, the lender, "at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law." The clause also explains that the lender "shall give notice to Borrower prior to acceleration" and that the notice "shall specify" the default, how to cure it, and the deadline to cure it. Such notice will also "specify" that failure to cure the default "may result in acceleration . . . and sale of the Property at public auction."[2]

---

[1] The loan's maturity date was March 1, 2037.

[2] The Note similarly states that if the lender "exercises the option to require immediate payment in full, [it] shall give Borrower notice of acceleration."

2

On March 28, 2007, lender New Century assigned HomEq Servicing to service the loan. It then indorsed the Note to Deutsche, who became the holder of the Note and the beneficiary of the Deed of Trust.

The Hansons failed to make their monthly mortgage payment due October 1, 2007, defaulting on the Note and Deed of Trust. On November 2, 2007, HomEq sent the Hansons a letter, providing notice that they defaulted on the mortgage payments. The letter stated:

> If your Account is not brought current within thirty-five (35) days of the date of this letter, which is 12/07/2007, HomEq will, without further demand, accelerate the maturity date of the Account and declare the total balance immediately due and payable. As a consequence, HomEq may refer your Account to an attorney for foreclosure . . . .
>
> As of the date of this letter, the amount required to bring the Account current and avoid foreclosure is . . . $6,132.07[.] . . .
>
> . . . .
>
> Although you are not required to pay the total debt (or balance) of the Account prior to its maturity or acceleration, federal law requires HomEq to provide you with the total debt (or balance) due to HomEq as of the date of this letter, which is $349,815.64. The total estimated debt amount provided herein is for informational purposes only and this letter is not intended to act as a "payoff statement" or "demand" for you to pay the Account in full.

On November 27, 2007, the Hansons sent HomEq a check for $2,589. HomEq returned the check and explained that "[t]he account is in foreclosure and the check amount is not sufficient to reinstate the loan. Unless you can fully reinstate your loan, or work out a satisfactory payment plan with us, we cannot accept your payment." The Hansons did not "work out" a payment plan with HomEq. Instead, they kept sending HomEq monthly checks in amounts

3

insufficient to bring their loan current, and HomEq kept rejecting the payments for the same reason.

On February 22, 2008, HomEq sent the Hansons a letter, stating:

> As you chose not to bring the loan current and/or enter into an approved payment agreement with HomEq, your account was referred to our Foreclosure Department on December 10, 2007. However, to avoid further foreclosure action you must either reinstate your debt with HomEq and/or enter into an approved payment arrangement agreement.

Again, the Hansons did not pay the amount due or enter into a payment agreement with HomEq.

On July 11, 2008, HomEq began the nonjudicial foreclosure process for the Property. Regional Trustee Services Corporation (RTS) recorded a "Notice of Trustee's Sale" (Notice), stating that on October 10, 2008, RTS would sell the Property "at public auction to the highest and best bidder, payable at the time of sale" (Trustee's Sale). The Notice stated that the arrears on the loan totaled $28,262. And the Trustee's Sale "will be discontinued and terminated" if the Hansons paid those arrears at any time up to 11 days before the sale date.

On August 12, 2008, HomEq sent the Hansons a letter, stating it made several unsuccessful attempts to contact them. It said that "a foreclosure sale is pending" and directed the Hansons to contact its mitigation department for options to "suspend any pending foreclosure action and help bring delinquent accounts to a current status." On October 6, HomEq called the Hansons to discuss a "restructure agreement." The Hansons then sent HomEq a $5,200 payment, which they thought was a "fee to get the new loan." On December 31, HomEq sent the Hansons a proposed "Forbearance Agreement," which outlined

4

"the terms and conditions of the repayment schedule." HomEq informed them that "[b]efore foreclosure action may be suspended, the [Forbearance] Agreement must be signed and returned . . . and the down payment must be received." The Hansons did not sign the Forbearance Agreement or make any payments as outlined in the agreement.

On January 6, 2009, HomEq continued the Trustee's Sale of the Property to February 6, 2009. On February 6, the Trustee's Sale took place, and Deutsche bought the Property for $394,805. On March 6, Deutsche recorded a "Trustee's Deed" in Skagit County. After Deutsche purchased the Property, the Hansons continued living there without paying the mortgage or property taxes.[3]

On September 1, 2010, Ocwen Loan Servicing LLC began servicing the Hansons' loan. On April 27, 2011, Ocwen sent the Hansons a notice of default, saying, "Your mortgage payments are past due, which puts you in default of your loan agreement." The Hansons still paid nothing, and Ocwen sent them a similar notice one year later.

On September 24, 2014, Deutsche sued the Hansons to rescind the Trustee's Deed, reinstate the Deed of Trust, and judicially foreclose on that deed.[4] On December 1, 2016, Deutsche amended its complaint, seeking an order quieting title in its favor under the Trustee's Deed. In the alternative, Deutsche asked to rescind the Trustee's Deed, reinstate the Deed of Trust, and

---

[3] In April 2009, Deutsche sued the Hansons for unlawful detainer. But in August 2011, the trial court dismissed the case for want of prosecution.

[4] Deutsche explained that the necessary parties were not properly informed about the postponement of the Trustee's Sale, which may have invalidated the February 6, 2009 Trustee's Sale and March 6, 2009 Trustee's Deed.

5

foreclose. On March 2, 2017, the Hansons raised several counterclaims, including a request to quiet title in their favor.

In October 2018, both parties moved for summary judgment. On February 28, 2019, the trial court granted the Hansons' motion for summary judgment, dismissing Deutsche's claims with prejudice. The court found that the Trustee's Sale was invalid because Deutsche "failed to establish compliance with the statutory notice requirements for postponements of the sale date" under RCW 61.24.040(10)(a). And it deemed the nonjudicial foreclosure and Trustee's Deed void. The court also found that HomEq had accelerated the Hansons' loan by February 22, 2008. And it determined that because Deutsche failed to file its complaint within six years of that acceleration date, the statute of limitations barred its judicial foreclosure claim.

On March 11, 2019, Deutsche moved for reconsideration of the summary judgment orders. The trial court granted the motion in part, finding that HomEq did not accelerate the loan, so the statute of limitations did not run before Deutsche filed its foreclosure action. And while the court maintained that Deutsche failed to comply with the statutory requirements for postponement of the sale date, it found that there were material questions of fact about whether that failure prejudiced the Hansons and invalidated the sale. So, the court vacated its February 28 orders and denied both parties' motions for summary judgment.

On April 24, 2023, Deutsche moved for partial summary judgment on its judicial foreclosure claim. Deutsche stipulated that the Trustee's Sale was

invalid, "remov[ing] any material issue of fact as to whether [the] [c]ourt may declare the Trustee's Sale void." And it asked the court to reinstate the Deed of Trust and "enter a judgment of judicial foreclosure." The Hansons opposed, arguing that the statute of limitations and doctrine of laches barred Deutsche's claim. On July 6, the trial court granted Deutsche's motion. It determined that neither the statute of limitations nor the doctrine of laches barred judicial foreclosure.

On December 11, 2023, Deutsche moved for summary judgment on the Hansons' counterclaims, including their quiet title claim. On January 17, 2024, the trial court granted the motion. On August 7, the trial court entered an amended judgment and decree of judicial foreclosure against the Hansons in the amount of $1,034,009 and ordered that the Property be sold to satisfy the judgment.

The Hansons appeal.

ANALYSIS

The Hansons argue the trial court erred by granting summary judgment for Deutsche. They contend that HomEq accelerated their loan, so Deutsche failed to bring its judicial foreclosure claim within the statute of limitations. They also assert that the doctrine of laches bars Deutsche's claim.

We review an order granting summary judgment de novo. *Deutsche Bank Nat'l Tr. Co. v. Slotke*, 192 Wn. App. 166, 170, 367 P.3d 600 (2016). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Slotke*, 192

7

Wn. App. at 170-71. The moving party has the initial burden to show there is no genuine issue of material fact. *Slotke*, 192 Wn. App. at 171. Then the burden shifts to the other party to set forth specific facts rebutting the moving party's contentions and disclosing the existence of a genuine issue about a material fact. *Id.* We view all facts and reasonable inferences in a light most favorable to the nonmoving party. *Terhune v. N. Cascade Tr. Servs., Inc.*, 9 Wn. App. 2d 708, 717, 446 P.3d 683 (2019).

1. Statute of Limitations

The Hansons argue that HomEq accelerated their obligations on the loan, triggering the statute of limitations under RCW 62A.3-118(a). As a result, Deutsche's judicial foreclosure claim is barred by the six-year statute of limitations. We disagree.

We review de novo whether a statute of limitations bars an action. *4518 S. 256th, LLC v. Karen L. Gibbon, PS*, 195 Wn. App. 423, 435, 382 P.3d 1 (2016). A deed of trust foreclosure remedy has a six-year statute of limitations. *Id.* at 434 (citing RCW 4.16.040)). And, under RCW 62A.3-118(a):

> [A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.

Acceleration changes a loan's maturity date from the future to the present. *Rodgers v. Rainier Nat'l Bank*, 111 Wn.2d 232, 237, 757 P.2d 976 (1988). So, if an installment note is accelerated, "the entire remaining balance becomes due and the statute of limitations is triggered for all installments that had not previously become due." *Gibbon*, 195 Wn. App at 434-35.

For acceleration to occur, it must be "made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised [its] right to accelerate the payment date." *Glassmaker v. Ricard*, 23 Wn. App. 35, 37-38, 593 P.2d 179 (1979). In other words, there must be "formal notice that the note had been accelerated." *Terhune*, 9 Wn. App. 2d at 720. A default on the loan will not accelerate a note, even if an installment note provides for automatic acceleration on default. *Id.* at 719. Neither does the initiation of nonjudicial foreclosure proceedings automatically accelerate a note. *Id.*

Here, the Hansons agreed under the Note to make their mortgage payments over 30 years with monthly installments beginning April 1, 2007. So, the Note's due date was March 1, 2037. Under RCW 62A.3-118(a), Deutsche had "within six years after the due date . . . stated in the [N]ote" to bring its judicial foreclosure claim. Deutsche sued the Hansons in September 2014, well before the loan became due, so the statute of limitations had not expired.

Citing *Azure*, the Hansons argue that HomEq had accelerated their loan obligations by February 22, 2008. *Wash. Fed. v. Azure Chelan LLC*, 195 Wn. App. 644, 382 P.3d 20 (2016). In *Azure*, a junior lienholder of property brought a quiet title action, and the trial court granted summary judgment in its favor. *Id.* at 648, 650-51. The senior lienholder appealed, arguing there were questions of fact about when it accelerated its loan and when the statute of limitations for foreclosure began to run. *Id.* at 651-52. Division Three of our court affirmed the grant of summary judgment, concluding that the lender gave clear notice that it had accelerated the loan, so the statute of limitations expired before the junior

lienholder sued to quiet title. *Id.* at 663-65. The court relied on language in the notice of default that said the " 'Total Amount Due' " was $6,116,545.07, which "includes the 'Accelerated balance due under [the] Promissory Note.' " *Id.* at 663. And it noted that the notice's " 'Consequences of Default' " section provided that the "entire unpaid balance of the Promissory Note . . . with the principal amount of $5,500,000.00 plus all accrued interest and all other amounts that may be owing thereunder are immediately due and payable." *Id.* at 663-64.

Conversely, in *Terhune*, the plaintiffs defaulted on a loan secured by a deed of trust on their home and received notices that their obligations on the promissory note would be accelerated if they did not cure the default. 9 Wn. App. 2d at 712-14. The lender issued a notice of trustee's sale for the home. *Id.* at 714. The plaintiffs then sued to enjoin the foreclosure and quiet title to their home, arguing the promissory note was accelerated and the statute of limitations expired before the foreclosure action. *Id.* at 716. The bank and lender jointly moved for summary judgment, arguing that "the loan was never accelerated," and the trial court granted the motion. *Id.*

Division Two of this court affirmed, holding that "the statute of limitations did not bar the foreclosure action because there was no clear and unequivocal acceleration of the promissory note." *Terhune*, 9 Wn. App. 2d at 712. It relied in part on the notice of default's language stating that the mortgage payments " 'will' be accelerated" if the plaintiffs did not cure the default, reasoning it was a "conditional statement" that failed to "unequivocally alert the borrower that the note holder *has* already elected to accelerate the loan." *Id.* at 720, 723 (notice of

"*intent*" to accelerate is advance notice, not an affirmative election). The court also concluded there was no acceleration because the bank never indicated that it sought the entire balance of the mortgage. *Id.* at 722-23.

This case is like *Terhune*. On October 1, 2007, the Hansons defaulted on their loan. On November 2, HomEq sent the Hansons a notice of default letter, stating, "*If* your Account is not brought current within thirty-five (35) days of the date of this letter, . . . HomEq *will*, without further demand, accelerate the maturity date of the Account and declare the total balance immediately due and payable."[5] It said that "the amount required to bring the Account current and avoid foreclosure is . . . $6,132.07." And it clarified that "the letter is not intended to act as a 'payoff statement' or 'demand' for you to pay the Account in full." Unlike the notice of default in *Azure*, HomEq's notice of default showed only its future intent to accelerate the loan if the Hansons did not cure their default. And it explained that the Hansons could cure their default by paying past due installment payments and need not "pay the Account in full."

Still, the Hansons argue that HomEq's refusal to accept their payments and its February 22, 2008 letter stating that the loan "was referred to our Foreclosure Department" show that it had accelerated the loan. We disagree.

HomEq's February 22 letter notified the Hansons that it was initiating foreclosure proceedings, not that it was accelerating their loan. The letter states that "to avoid further foreclosure action you must either reinstate your debt with HomEq and/or enter into an approved payment arrangement agreement." And,

---

[5] Emphases added.

as discussed, the initiation of foreclosure proceedings does not, by itself, accelerate loan obligations. Further, HomEq did not return the Hansons' checks because it required payment of the loan in full. Instead, HomEq explained that "[t]he account is in foreclosure" and that the check amounts are "not sufficient to reinstate the loan."[6] It informed the Hansons that they could reinstate the loan by paying the past due installment payments totaling $6,132.07. Indeed, HomEq offered the Hansons an "approved payment arrangement agreement," which would be meaningless if it had accelerated the Hansons' loan obligations.[7]

Because HomEq did not accelerate the Hansons' loan, the statute of limitations did not bar Deutsche's judicial foreclosure claim.[8]

## 2. Doctrine of Laches

The Hansons also argue that Deutsche's claim for judicial foreclosure is barred by laches. We disagree.

Whether the doctrine of laches applies is a question of law we review de novo. *West v. Walla Walla City Council*, 34 Wn. App. 2d 195, 203, 567 P.3d 634 (2025). Laches is an equitable defense that courts apply to protect a party from an unreasonable prejudicial delay. *In re Marriage of Tupper*, 15 Wn. App. 2d 796, 810, 478 P.3d 1132 (2020). But it "should be used sparingly." *Id.* at 810-11.

---

[6] The Hansons' November 2007 check was for $2,589.

[7] The Hansons assert that reading HomEq's November 2, 2007 notice of default letter and its February 22, 2008 letter together show that HomEq notified the Hansons it was accelerating the loan. We disagree. Even reading them together, HomEq never demanded immediate payment of the full amount of the loan.

[8] Because we conclude the trial court did not err by granting summary judgment for Deutsche, we reject the Hansons' argument that the trial court erred by dismissing their counterclaim to quiet title in their favor.

A defendant asserting the doctrine of laches must show (1) the plaintiff's knowledge of facts constituting a cause of action or a reasonable opportunity to discover the facts, (2) the plaintiff's unreasonable delay in bringing an action, and (3) damage to the defendant resulting from the delay. *Davidson v. State*, 116 Wn.2d 13, 25, 802 P.2d 1374 (1991). Laches will not bar a claim unless the defendant shows they have "so altered [their] position that it would be inequitable to enforce the claim." *Tupper*, 15 Wn. App. 2d at 811.

The Hansons' laches defense fails because they cannot show that any unreasonable delay by Deutsche in bringing its foreclosure claim caused them damage. Indeed, the Hansons largely benefitted from the delay. They made no mortgage or property tax payments on the Property after 2008 but continued to live in the residence. While the Hansons now point to the $1,034,009 judgment against them as evidence of damage, those fees and costs are a result of their failure to make mortgage payments on the Property, not the delay in foreclosure proceedings. As a result, the doctrine of laches does not bar Deutsche's claim.

3. Attorney Fees and Costs on Appeal

Both parties request attorney fees and costs on appeal under RAP 18.1 and RCW 4.84.330.

We may award attorney fees and costs under RAP 18.1(a) if applicable law grants a party the right to recover such fees. RCW 4.84.330 provides that

> [i]n any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified

in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

The statute defines "prevailing party" as "the party in whose favor final judgment is rendered." *Id.* Here, the Deed of Trust provides for an award of attorney fees and costs to the prevailing party. Because Deutsche is the prevailing party, we award it attorney fees and costs on appeal subject to compliance with RAP 18.1.

We affirm the amended judgment and decree of judicial foreclosure and underlying summary judgment orders and award Deutsche its attorney fees and costs on appeal.

_____, ACJ

WE CONCUR:

_____         _____